**Affirmed in Part, Remittitur Suggested in Part, and Memorandum Opinion filed November 23, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00800-CV

---

## ANA LISA MINES, PERSONAL REPRESENTATIVE OF THE ESTATE OF JORGE LUIS MINES, AND OLD AMERICAN MUTUAL FIRE INSURANCE COMPANY, Appellants

## V.

## KENON D. MURPHY, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2013-66594**

---

### MEMORANDUM OPINION

Appellants Ana Lisa Mines, Personal Representative of the Estate of Jorge Luis Mines, and Old American County Mutual Fire Insurance Company appeal the jury verdicts in favor of appellee Kenon D. Murphy. In eight issues appellants assert that this court should reverse the trial court's judgment. We affirm in part and suggest remittitur in part.

# I.    BACKGROUND

Appellee Kenon D. Murphy was injured in a motor vehicle collision when his tractor-trailer was struck head-on by a vehicle driven by Jorge Luis Mines. Jorge died from his injuries. Appellee sued appellant "Ana Lisa Mines, personal representative of the estate of Jorge Luis Mines" asserting claims of negligence, negligence per se, and gross negligence for the injuries he received from the collision.

After filing suit, appellee's trial counsel sent a demand letter to appellants' trial counsel detailing the injuries suffered by appellee in the collision and demanding that appellant Old American tender the insurance policy limits to settle appellee's claims. The parties disagree about what happened next. Old American contended that it accepted the offer of settlement. Appellee contended that Old American sent a counteroffer instead of an acceptance and failed to accept the offer by not "tendering" the amount demanded in the offer by the deadline.

Old American filed a motion for enforcement of the settlement agreement and a motion for summary judgment on its claims for breach of the settlement agreement; both were denied by the trial court. Old American and appellee tried to a jury the issue of whether the parties entered into a settlement agreement. The jury returned a verdict in favor of appellee, finding that no settlement agreement was entered into between the parties. Because the jury found that there was no settlement agreement, the trial court conducted a second jury trial on liability and damages for appellee's personal injury claims. The second jury returned a verdict in favor of appellee. This appeal followed.

## II. ENFORCEMENT AND SUMMARY JUDGMENT MOTIONS

In appellants' first issue, they argue that the trial court "erred by failing to acknowledge and enforce a valid settlement agreement . . . and by proceeding to jury trials in this case." The general rule is that a denial of a summary judgment cannot be reviewed on appeal. *United Parcel Serv. v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Where a motion for summary judgment is denied and the case is tried on the merits, the order denying the summary judgment cannot be reviewed on appeal. *Id.* (citing *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1996)). The party's remedy is to assign error to the trial court's judgment ultimately rendered following trial on the merits. *Id.*

In the first issue, appellants are appealing the denial of their motions for summary judgment and motion for enforcement.[1] The appropriate remedy is to assign error to the trial court's judgment following the trial on the merits. *See id.* We overrule appellants' first issue.

## III. JURY CHARGE

In appellants' second issue, they argue that the trial court erred by submitting the definition of the word "tender" as proposed by appellee because "it

---

[1] In the first issue appellants do not explicitly state they are appealing the denial of the summary judgment and enforcement motions. However, appellants frame the issue as one of the trial court committing error because it allowed the case to proceed to a jury trial. Appellants cite only to the clerk's record, including the summary judgment and enforcement motions as well as the notice of rule 11 agreement. There are no citations to the evidence admitted at trial or any trial testimony. Appellants complain in issue one that "the Trial Court submitted the issue to a jury . . . [and] committed reversible error" and "[b]ecause of the settlement, neither of the trials that took place was necessary." Appellants did not make a motion for directed verdict at any time during the first trial or object to the submission of the case to the jury. In their third issue, appellants contend that "there was legally insufficient evidence to support the jury's verdict on Question 1 (settlement) . . . or the jury's verdict was against the great weight and preponderance of the evidence."

was defective and misleading when applied to the . . . demand letter." Appellants argue that the "definition was not in conformity with the evidence introduced during trial and was thus calculated to result in the rendition of an improper jury verdict." Appellee contends that the definition was substantially correct and that appellants waived any error by failing to object.

## A.    General Legal Principles

"A request by either party for any questions, definitions, or instructions shall be made separate and apart from such party's objections to the court's charge." Tex. R. Civ. P. 273. "A party objecting to a charge must point out distinctly the objectionable matter and the grounds for the objection. Any complaint as to a . . . definition . . . is waived unless specifically included in the objections." Tex. R. Civ. P. 274. "The rule creates a two-pronged test: objections to the charge must specify the error and the legal bases of the objection." *Meyers v. 8007 Burnet Holdings, LLC*, 600 S.W.3d 412, 422 (Tex. App.—El Paso 2020, pet. denied). "Preservation of error generally depends on 'whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.'" *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43 (Tex. 2007) (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992)).

## B.    Background

During the jury charge conference, the trial court presented the parties with its proposed charge. Old American objected to the charge and offered a written instruction for the definition of "tender" to the trial court.[2] Appellee also objected

---

[2] The trial court also refused two more instructions proffered by Old American for inclusion in the jury charge. Appellants argue that it was error for the trial court to refuse to include these instructions but do not argue how the failure to include these instructions was an abuse of discretion or provide any citation to authority. Appellants further fail to argue or demonstrate how the exclusion of these instructions probably caused the rendition of an

4

and offered a written instruction for the definition of "tender." The trial court refused to include either appellee's or Old American's proposed definitions of "tender" and concluded the jury charge conference. The next morning prior to reading the charge to the jury, the trial court decided that it would include appellee's definition of "tender" in the charge after reviewing the cases submitted by the parties.[3] Appellants' counsel requested additional time to discuss the trial court's decision, but the trial court told him it was unnecessary. There were no further objections or discussion about the jury charge. The trial court then read the charge to the jury.

## C. Analysis

Here, while the trial court was fully aware of appellants' requested definition, appellants did not object to the inclusion of the definition provided by appellee.[4] *See* Tex. R. Civ. P. 273, 274; *see also EYM Diner L.P. v. Yousef*, 05-19-00636-CV, 2020 WL 6883171, at *11 (Tex. App.—Dallas Nov. 24, 2020, no pet. h.) ("But more importantly, the pretrial proposed charges, standing alone, did not apprise the trial judge of the purported problems with and errors in the court's charge that [the appellants] now assert on appeal, nor did they give the trial judge an opportunity to cure those purported errors."); *Meyers*, 600 S.W.3d at 423 ("Had counsel explained why its suggested charge more closely followed the statute, we might view the situation differently."). Old American failed to object to the inclusion of appellee's definition of tender and alert the trial court as to why it was

---

improper judgment or probably prevented the appellant from properly presenting its case to this court. *See* Tex. R. App. P. 44.1; *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009). Therefore, any argument that the trial court erred in refusing these instructions has been waived. *See* Tex. R. App. P. 38.1(h).

[3] The cases submitted and briefing, if any, are not part of the record on appeal.

[4] Appellant states "[o]ver the objection of Intervenor Old American . . ." but does not point to where such an objection was made. No such objection appears in the record.

erroneous or why its definition was a more accurate statement of the law in this case. *See Meyers*, 600 S.W.3d at 423. On appeal appellants argue that the definition submitted was not an accurate statement of the law because in certain circumstances "tender" does not mean the actual production of funds and cites to cases supporting that contention. However, the record does not reflect that such an argument was made to the trial court so as to allow the trial court to correct any error in the charge prior to reading the charge to the jury. The proposed definition provided by appellant did not apprise the trial court of the purported problems with the charge that appellants now assert on appeal. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 829 (Tex. 2012) ("Our procedural rules require the lawyers to tell the court about such errors before the charge is formally submitted to a jury."); *Ledesma*, 242 S.W.3d at 43–44 (concluding jury charge error preserved where "[t]he objection, proposed question and instruction, and supporting authorities provided the trial court with a plain objection identifying the error in the charge that we recognize today, 'with sufficient specificity to make the trial court aware of the complaint.'" (quoting Tex. R. App. P. 33.1(a)(1)(A)); *Meyers*, 600 S.W.3d at 423 ("But leaving the task of discerning the differences between the two forms of the questions to the trial court simply asks too much."). Thus, we agree with appellee that appellants have not preserved their complaint of jury charge error with regard to the definition of the term "tender" that was submitted to the jury.

Appellants argue that the trial court did not allow Old American to voice its objection and that the prior discussion was not on the record because it occurred during the informal jury charge conference. While this may be the case, Old American did not preserve the error that it now asserts on appeal because we cannot ascertain from the record whether the arguments made on appeal were

made to the trial court prior to the charge being read to the jury. *See* Tex. R. App. P. 33.1(a)(1)(A); *Cruz*, 364 S.W.3d at 831 ("Protech can complain on appeal only if it made the trial court aware, timely and plainly, of the purported problem and obtained a ruling."). The rules require that prior to presenting an error to the appellate court, the party must first give the trial court the opportunity to hear the argument and correct the alleged error. *See Cruz*, 364 S.W.3d at 831.

We overrule appellants' second issue.

## IV. LEGAL AND FACTUAL SUFFICIENCY IN THE FIRST TRIAL

In appellants' third issue, appellants argue that the evidence is "legally insufficient to support the jury's verdict" on the settlement agreement in the first trial, or "the jury's verdict was against the great weight and preponderance of the evidence."

## A. General Legal Principles

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See* id. at 819.

A party attacking legal sufficiency relative to an adverse finding on which it had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46

7

S.W.3d 237, 241 (Tex. 2001) (per curiam). We review the entire record to determine if the contrary proposition is established as a matter of law only if there is no evidence to support the judgment. *See id.* Anything more than a scintilla of evidence is legally sufficient to support the judgment. *See Wilson*, 168 S.W.3d at 822. The final test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. The factfinder is the sole judge of witness credibility and the weight to give witnesses' testimony. *Id.* at 819.

"Our review is restricted to the jury charge as submitted when there was no objection to the instruction." *Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 407 (Tex. 2016). "Even if another legal theory was argued to the jury and explained by the lawyers in argument, we are bound by the instructions given to the jury and presume that the jury followed those instruction." *Id.* (citing *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 861–62 (Tex. 2009)).

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). When a party attacks the factual sufficiency of an adverse finding on which it bore the burden of proof, it must establish that the finding is against the great weight of the preponderance of the evidence. *Schear Hampton Drywall, LLC v. Founders Commercial, Ltd.*, 586 S.W.3d 80 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Dow Chem. Co.*, 46 S.W.3d at 242). The trier of fact stands as the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We may not substitute our

own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Mar. Overseas Corp.*, 971 S.W.2d at 407. It takes far less evidence to affirm a judgment than to reverse a judgment. *Pascouet*, 61 S.W.3d at 616.

To have an enforceable agreement under Texas Rule of Civil Procedure 11, the agreement must be in "writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." Tex. R. Civ. P. 11. To satisfy Rule 11, there must be a written memorandum which is complete within itself in every material detail, and which contains all the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). The writing need not be in only one document. *Id*.

The following elements are required for the formation of a binding contract: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 555–56 (Tex. App.—Houston [14th Dist.] 2002, no pet.). For an agreement to be enforceable, there must be a meeting of the minds with respect to its subject matter and essential terms. *Id*. at 556. The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did—and not on their subjective state of mind. *Id*. In determining mutual assent, the court considers the communications between the parties and the acts and circumstances surrounding those communications. *Id*.

**B.    Background**

The first trial between the parties was to determine whether the parties had entered into a Rule 11 settlement agreement.  Appellee's attorney sent a settlement demand letter to appellants.  The offer of settlement made by appellee's attorney stated in pertinent part:

> We hereby demand upon you for tender of the full amount of the available policy limits before the expiration of fourteen (14) days from your receipt of this demand.  In exchange, we propose to fully release your insured for all claims and liens. . . . In the event this demand is not met by the expiration date, this offer of settlement is automatically revoked.

Eleven days later, appellant's insurer responded by letter to appellee and stated:

> This letter will serve as our reconfirmation of the company's agreement to tender the applicable per person Bodily Injury policy limits in the amount of $30,000.00 in full and final resolution of any and all claims which your client may now or in the future possess as a result of this motor vehicle accident. If you will recall, this offer had been previously extended on September 11, 2013.
>
> Enclosed please find a release.  In addition, . . . the company is required to secure a W-9 form with your tax identification number. . .
>
> Upon receipt of the above, we will process the settlement draft.

The meaning of the word "tender" was a contested issue in the first trial.  It was undisputed that appellants did not send any money to appellee or relinquish possession of any funds under circumstances that would allow appellee to acquire possession without special effort.

In the jury charge, the jury was asked: "Do you find that [appellee's] letter . . . and [appellants'] letter . . . constituted an agreement whereby [appellee] would fully and finally settle his claims . . . in exchange for [appellants'] tender of $30,000.00 before December 26, 2013?"  The jury charge instructed that "tender"

meant "an unconditional offer to pay. A valid and legal tender consists of the actual production of the funds and the tenderer must relinquish possession of the funds under such circumstances as to enable the person to whom it is tendered, without special effort on his part[,] to acquire possession."

## C. Analysis

Although appellants argued that "tender" did not mean actual production of the funds, because the jury was instructed that "tender meant actual production" or relinquishment of the funds, we cannot consider appellants' legal theories when reviewing the legal sufficiency of the evidence of the jury's findings. *See Seger*, 503 S.W.3d at 407. Thus, because it was undisputed that appellants did not tender[5] the amount as demanded in the settlement offer, appellants cannot demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *See Dow Chem. Co.*, 46 S.W.3d at 241.

After considering and weighing all the evidence in the first trial, we conclude that the jury's finding that there was no settlement agreement entered into between the parties is not against the great weight of the preponderance of the evidence. *See Schear Hampton Drywall, LLC*, 586, S.W.3d at 242. Because of the way the jury was instructed on the definition of tender and because there was no evidence that appellants' "tendered" the amount demanded, the evidence was factually sufficient to support the jury's verdict.

We overrule appellants' third issue.

---

[5] As that term was defined in the jury charge. Because we concluded that appellants failed to preserve their argument with regard to jury charge error, we do not analyze or comment as to whether the charge given was proper.

## V.    EXPERT WITNESS TESTIMONY

In appellants' sixth issue they contend that the trial court erred by allowing appellee's expert witness to testify about certain topics.  First appellants argue that the trial court erred because it allowed the chiropractor to testify regarding appellee's post traumatic stress disorder because he was not designated or qualified to testify about this issue.  Appellants also contend that appellee failed to establish the proper foundation for such testimony.  Second, appellants argue that the trial court allowed the chiropractor to testify about bio-mechanical engineering and causation issues without being properly qualified or designated.  Third, appellants contend that the trial court erred in allowing the chiropractor to testify about appellee's future medical expenses because he was not properly qualified or designated.

### A.    General Legal Principles

"Failure to designate a testifying expert and an expert's alleged lack of qualifications are defects of form on which an appellant must object and obtain a ruling to preserve error."  *Expro Americas, LLC v. Sanguine Gas Expl., LLC*, 351 S.W.3d 915, 919–20 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see also Duncan-Hubert v. Mitchell*, 310 S.W.3d 92, 102 (Tex. App.—Dallas 2010, pet. denied).  If there is no ruling on such objections by the trial court, then the objections are waived.  *Expro Americas, LLC*, 351 S.W.3d at 920.

We review a trial court's admission of expert witness testimony for an abuse of discretion.  *See Gunn v. McCoy*, 554 S.W.3d 645, 666 (Tex. 2018); *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 716 (Tex. 2016).  To reverse a trial court's judgment based on the admission of evidence, we must find that the trial court committed error and that the error was harmful.  *See Gunn*, 554 S.W.3d at 666 (citing *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)

("To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment.")). "Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted." *Discovery Op., Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 169 (Tex. App.—Eastland 2010, pet. denied).

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. "Admissibility of an expert's opinion hinges on whether the expert has special knowledge concerning the matter on which his opinion is sought that will assist the trier of fact." *Moreno v. Ingram*, 454 S.W.3d 186, 193 (Tex. App.—Dallas 2014, no pet.).

## B.    Background

In the second trial, appellee called a chiropractor to testify about appellee's injuries. The chiropractor testified that he has been a licensed chiropractor for approximately sixteen years, that he had learned to treat people involved in "traumatic accidents," including any type of musculoskeletal injury, brain-traumatic injuries particularly in the context of car accidents, and work injuries. The chiropractor testified that he could diagnose and treat musculoskeletal injuries and manipulate the spine to help a patient with those injuries. He is further qualified as a state certified "Designated Doctor" and "Impairment Evaluation Physician" meaning that he is designated within the Texas workers compensation

system to help determine "the status and evaluation" for injured workers eligible for workers compensation. The chiropractor took a separate class and examination to qualify as a Designated Doctor and Impairment Evaluation Physician. As a Designated Doctor and Impairment Evaluation Physician the chiropractor examines injured employees to determine questions from their treating physicians regarding the extent of their disability or impairment. The chiropractor performed an "Impairment Rating Evaluation" on appellee in 2015 and prepared a report of his findings from this evaluation. The report was admitted into evidence without objection.

The chiropractor testified that in preparing his evaluation he reviewed appellee's medical records from diagnostic testing performed by other doctors. The chiropractor testified that based on his review of appellee's medical records he believed that appellee suffered injuries to his spine and ribs, as well as trauma to his brain as a result of the collision. He testified that appellee's MRI showed that appellee had a "bulge" and "protrusion" in two different places in his neck and that these injuries were the result of the collision because such injuries are typically associated with whiplash experienced in a collision and because appellee did not have any prior medical history of neck injury. The chiropractor testified that appellee had received cortical steroids injected into his neck to reduce the pain appellee was experiencing from the neck injury. When examined by the chiropractor, appellee indicated that the injections helped to relieve some of the pain he was experiencing.

The chiropractor testified that in addition to his work as an Impairment Evaluation Doctor he also has a clinical practice where he treats patients who are injured. He testified that if he was appellee's treating doctor, assuming appellee was in the same condition at trial as he was on the day of the chiropractor's

examination, that appellee would need "cervical injections and additional physical therapy to go along with those injections."[6] The chiropractor testified that typical treatment for appellee's injuries require multiple injections over a long period of time.

The chiropractor then testified that pain management is something that is done in his office and that he is familiar with the costs associated therewith because he reviews the charges made by his office and what is paid. When asked about the costs associated with injections and physical therapy, appellants objected. The trial court sustained appellants' objection with regard to his testimony about the costs of injections but overruled appellants' objection with regard to the costs of physical therapy. The chiropractor testified that appellee would need between four and ten visits and the average cost would be between $250-$300 per visit. He testified that appellee would need "[a]t least six to ten sessions of therapy" based off the injection and more if he experiences a "flare up of his cervical injury."

C.    **Analysis**

Appellants first argue that the trial court abused its discretion in admitting the expert witness testimony because appellee's expert was never designated. Appellants refer to an objection filed in the trial court to appellee's alleged failure to designate experts, but there is no indication that this objection was ever ruled on by the trial court. As a result, appellants have failed to preserve this issue for review. *See Expro Americas, LLC*, 351 S.W.3d at 919–20; *Duncan-Hubert*, 310 S.W.3d at 102.

---

[6] Appellants objected to these questions but did not object to a lack of qualification. Instead, appellants objected to a lack of foundation, which was overruled by the trial court.

Appellants next argue that the chiropractor was never qualified to testify about post-traumatic stress disorder or "biomechanical engineering and causation" issues. Assuming appellants have preserved such arguments,[7] appellants have not identified or argued how this testimony probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004) ("Having found the trial court erred in admitting [the evidence] . . . we must consider whether these errors require reversal. Erroneous admission of evidence requires reversal only if the error probably (though not necessarily) resulted in an improper judgment."); *see also State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Due to lack of any such argument or demonstration of harm, appellants have waived this issue on appeal.

Even assuming that the chiropractor's testimony about appellee's post-traumatic stress disorder was erroneous, appellee testified at length about his post-traumatic stress disorder, detailing how the collision had affected his life daily, how he suffered from reoccurring visions of headlights coming at him and was unable to drive, and how he suffered from depression, attempted suicide, and was admitted into psychiatric care because of the aftereffects of the collision. Additionally, the chiropractor's evaluation admitted into evidence without

---

[7] Appellants cite to two places in the record where the chiropractor testified regarding appellee's post-traumatic stress disorder. The first is during direct examination to which appellants did not object. The second is during cross-examination and elicited by appellants. Appellants also cite to their objections to the expert witness filed in the trial court but have failed to show where this objection was submitted to the trial court or heard by the trial court. It is also not apparent from the record that appellants obtained a "running objection" to the chiropractor's testimony about appellee's post-traumatic stress disorder. Appellants cite to only one place in the record where the chiropractor testified regarding "biomechanical engineering and causation" issues—during cross-examination. Such testimony was elicited by appellants. Appellants have not otherwise identified what other testimony on this issue was offered, over objection, and harmful.

objection indicated that appellee had seen a doctor for psychiatric consultation and the doctor had classified appellee as experiencing "extreme impairment . . . because his impairment levels preclude useful functioning with regard to activities of daily living, social functioning, concentration and adaptation." Because other evidence was introduced regarding appellee's post-traumatic stress disorder, appellants have failed to show that the judgment turns on the chiropractor's testimony on this topic. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000) ("This court ordinarily will not reverse a judgment for erroneous rulings on admissibility of evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case."); *Discovery Op., Inc.*, 311 S.W.3d at 169.

Regarding the chiropractor's testimony about future medical expenses, appellants contend that the chiropractor was not qualified to testify about such expenses. The chiropractor testified that he treats and diagnoses patients with injuries, pain management, and relief and is familiar with the costs associated therewith. Within his office there is a doctor that is a "Pain Management Specialist," and the chiropractor is familiar with the procedures performed by the Pain Management Specialist and the costs associated therewith. The chiropractor testified that based upon a reasonable medical probability that appellee's physical injuries would require continued treatment in the future to address numbness, tingling and pain, and that there is a probability that surgery may be needed. Based on this record, we cannot conclude that the trial court abused its discretion in determining the that the chiropractor was qualified to opine on the medical cost or need of physical therapy. *See Hernandez v. Moss*, 538 S.W.3d 160, 170–71 (Tex. App.—El Paso 2017, no pet.) (admission of chiropractor's testimony about future medical expenses was not an abuse of discretion where chiropractor testified as to

training and experience and based conclusions on "reasonable medical probability"); *Hayhoe v. Henegar*, 172 S.W.3d 642, 644–45 (Tex. App.—Eastland 2005, no pet.).

We overrule appellants' sixth issue.

## VI.    LEGAL AND FACTUAL SUFFICIENCY IN THE SECOND TRIAL

In issue four, appellants argue that the evidence is legally and factually insufficient to support the jury's verdict on appellee's past lost wage earning capacity. Appellants contend that appellee failed to submit evidence in compliance with section 18.091 of the Texas Civil Practice and Remedies Code. In issue five, appellants argue that the evidence is legally and factually insufficient to support the jury's verdict on appellee's future medical expenses. Appellants contend that no evidence was offered as to future medical expenses. Appellants contend that to the extent that a chiropractor testified regarding future medical expenses, the chiropractor was neither qualified nor properly designated as an expert witness.

### A.    General Legal Principles

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

In a factual sufficiency review, we will set aside the verdict and remand for a new trial if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (citing *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951)). We will weigh the evidence supporting the verdict along with evidence contrary to the verdict. *See id.* at 761–62. However, the fact-finder remains the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.* at 761. We must defer to the fact-finder's determinations so long as those determinations are reasonable. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004). We may not merely substitute our judgment for that of the fact-finder. *Golden Eagle Archery*, 116 S.W.3d at 761.

## B.     Future Medical Expenses

To recover future medical expenses, a plaintiff must provide evidence showing a reasonable probability that the medical expenses will be incurred in the future and the probable cost of such expenses. *Gunn*, 554 S.W.3d at 112. While expert testimony is preferred, no precise evidence is required to support an award for future medical costs. *Id*. It is within the jury's discretion to determine the amount to award in future medical expenses. *Id*. This standard is not so vague that a reviewing court will uphold a jury award when there is no evidence to support the award. *Id*. "[T]he *only requirement* to support a verdict on this issue is that there be evidence in the record of the reasonable value of past medical treatment and to establish the probable necessity of future medical treatment." *Blankenship v. Mirick*, 984 S.W.2d 771, 778 (Tex. App.—Waco 1999, pet. denied). "Determination of the expense of future treatment is a matter for the jury to determine in the exercise of their sound discretion under proper instructions from the court." *Id*.

Appellee testified that he still sees three doctors; one is a treating doctor, one is a psychologist, and one is a neurologist. Appellee testified that he is still being treated for nerve damage to try to help get his strength back, headaches under control, and pain level down. Currently he is on medication, but sometimes receives massages to relieve symptoms. Appellee attested that he feels pain every day. Appellee did not submit documentation of medical expenses or testify about the costs incurred for his doctor visits, medication, or other medical needs. Appellee did not testify about how often he experiences "flare ups." The chiropractor testified that appellee would need between four and ten visits for physical therapy and the average cost would be between $250–$300 per visit. He testified that appellee would need "[a]t least six to ten sessions of therapy," and more if he experiences a "flare up of his cervical injury." The jury awarded appellee $10,000 in future medical expenses.

Reviewing the evidence in the light most favorable to the challenged finding and indulging every reasonable inference to support it, appellee submitted legally sufficient evidence to show that with a "reasonable medical probability" appellee could expect future medical care. Appellants argue that we may not consider the chiropractor's testimony. However, we have already decided that issue against appellants above. Thus, the evidence is legally sufficient to support an award of future medical expenses.

Reviewing the entire record considering both evidence in favor of and contrary to the challenged finding, the evidence in this case is factually insufficient to support the jury's award of $10,000 in future medical expenses. While there was evidence of other potential medical expenses that appellee might incur in the future, there was no evidence introduced regarding their reasonable cost or whether there was a reasonable probability that type of care would be required in the future.

20

*See Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("[T]o sustain an award of future medical expenses, the plaintiff must present evidence to establish that in all reasonable probability, future medical care will be required and the reasonable cost of that care."). As a result, the evidence is factually insufficient to support the jury's award of $10,000 in future medical expenses, but the evidence is factually and legally sufficient to support an award of $3,000 to appellee in future medical expenses. *See* Tex. R. App. P. 46.3; *see Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987) ("If part of a damage verdict lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of the verdict. The party prevailing in the trial court should be given the option of accepting the remittitur or having the case remanded."); *see also Matbon, Inc. v. Gries*, 288 S.W.3d 471, 485 (Tex. App.—Eastland 2009, no pet.) ("A court of appeals may exercise its power to suggest a remittitur when it determines there is insufficient evidence to support a damage award, but finds that there is sufficient evidence to support a lesser award.").

Appellants' issue five is sustained. Concluding the evidence is sufficient to support an award of $3,000 in future medical care expenses, we suggest a remittitur of $7,000 of the future medical care expenses, modifying the award of damages in the judgment from $512,859.00 to $505,859.00. Tex. R. App. P. 46.3. If appellee Kenon D. Murphy timely files the remittitur with the clerk of this court within twenty days from the date of this opinion, we shall render an amended judgment modifying the trial court's judgment to reflect an award of $505,859.00 in damages and affirming the trial court's judgment as so modified. Tex. R. App. P. 43.2(b), 46.3. If the suggested remittitur is not filed, the case will be remanded to the trial court for further proceedings limited to redetermination of future

21

medical care expenses of Kenon D. Murphy. *See Larson*, 730 S.W.2d at 641 (prevailing party has option to accept remittitur or have case remanded).

## C.     Past Lost Wage Earning Capacity

"Lost earning capacity is an assessment of what the plaintiff's capacity to earn a livelihood actually was and the extent to which that capacity was impaired by the injury." *Big Bird Tree Servs. v. Gallegos*, 365 S.W.3d 173, 178 (Tex. App.—Dallas 2012, pet. denied). "Loss of past earning capacity is a plaintiff's diminished ability to work during the period between the injury and the date of trial." *Hospadales v. McCoy*, 513 S.W.3d 724, 742 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Proof of lost earning capacity is always uncertain and left largely to the jury's discretion. *Id.* A plaintiff must submit evidence sufficient to permit a jury to reasonably measure earning capacity in monetary terms to support an award of lost earning capacity. *Id.* In determining lost earning capacity, non-exclusive factors may be considered including evidence of past earnings, the plaintiff's stamina, efficiency, ability to work with pain, and the plaintiff's work-life expectancy. *Id.*

At trial, appellee's wife testified that before the collision, appellee brought home approximately $1,000 per week for "about a week or two" before the collision. She testified that his weekly pay was his "take home" pay because he was still in training. Prior to that, appellee brought home about $600–$800 per week. Prior to his job at the time of the collision, appellee had worked for another trucking company. Appellee's wife testified that appellee made approximately $1,200–$1,800 per week depending on the distance driven. In another trucking position appellee was paid between $1,000–$2,000 per week, again depending on the distance driven. Appellee's wife testified that before the collision that she and

appellee had ambitions of owning their own company with multiple trucks and that others in her family had run their own trucking businesses.

Appellee testified that he had a class A commercial drivers license, that he had to take tests to become specially licensed and pass a physical. Appellee also had to pass a special background check and training to obtain certifications to drive hazardous materials, as well as training on facility procedures and emergency procedures. Appellee testified that he loved his job because of the "freedom" it provided him to move around, be outside, and be his own boss. Appellee wanted to buy his own truck and start his own trucking business. Appellee testified that in the weeks prior to the collision his "take-home" pay was approximately $900 per week and that as his responsibilities increased, so did his pay. The lowest pay he received in his job prior to the collision was $600 and the most was over $900. Appellee testified that if he had been able to continue he would have been earning between $1,000–$1,400 per week and if he had become an owner he could have made as much as $4,000 per week. Appellee testified that he had not been able to work for 226 weeks. Appellee testified that at $600 per week, he has lost wages in the amount of $135,600; at $900 per week, he has lost $203,400.

Appellants cross-examined appellee about appellee's 2012 tax return. The tax return showed that appellee was paid approximately $14,000 in 2012 from the trucking company he was working for at the time of the collision. The tax return showed that most of that income was reduced by "losses" from appellee's business, and as a result, appellee's adjusted gross income was $3,728. The 2012 tax return also showed that appellee's federal income tax liability for that year was $230. The jury awarded appellee $87,859 in loss of earning capacity incurred in the past.

Appellants argue that appellee failed to introduce any evidence in compliance with 18.091(a) of the Texas Civil Practice & Remedies Code. Section

23

18.091(a) requires that a plaintiff seeking certain damages, such as loss of earning capacity, provide evidence of the loss "in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to any federal income tax law." Tex. Civ. Prac. & Rem. Code § 18.091(a). However, appellants submitted evidence of appellee's federal income tax liability for the year of the collision showing that appellee was only subject to payment of $230 in federal income taxes that year. Appellee's evidence of his wages prior to the collision was his "take-home" pay, both he and his wife testified as to the amount that appellee brought home from his work as a truck driver. Appellee and his wife also testified to appellee's ability to work both before and after the collision.

Given the evidence that was introduced, the jury could have reasonably presumed that appellee's tax rate was on the lower side and that appellee's evidence reflected his net pay after taxes. *See Big Bird Tree Servs.*, 365 S.W.3d at 179; *see also Hospadales*, 513 S.W.3d at 742 ("Proof of loss of earning capacity is always uncertain and is left largely to the discretion of the jury."). The evidence presented by appellee was that his lost wage earning capacity was between $135,00$205,000 while the jury awarded only $87,895. Crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, we conclude that the evidence would enable reasonable and fair-minded people to award $87,895 in past lost earning capacity damages. *See Hospadales*, 513 S.W.3d at 744. Furthermore, considering and weighing all of the evidence, we conclude that the evidence is not so weak to be clearly wrong and unjust. *See id.* Thus, the evidence is legally and factually sufficient to support the jury's award for appellee's past lost wage earning capacity.

We overrule appellants' fourth issue.

## VII. CAPACITY

In their seventh and eighth issues, appellants contend that the trial court did not have jurisdiction over the Estate of Jorge Mines "since there was no probate action" and Ana Lisa Mines "was never appointed or qualified by any Texas court to serve as a representative of the Estate of Jorge Mines." Appellants argue that because appellee failed to serve the proper party to the lawsuit, filing against and serving the "personal representative" of the Estate of Jorge Mines, instead of Ana in her individual capacity, that the judgment rendered by the trial court is void. Appellee contends that there is no dispute that Ana is the surviving spouse of the decedent, Ana is an heir at law of the decedent, and that Ana, through her counsel, appeared in this cause and represented the interest of the decedent.

### A. General Legal Principles

In a survival action, the parties seek adjudication of claims against the decedent for the alleged injuries inflicted by the decedent upon the plaintiff. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005). "The action survives against the liable person and the person's legal representatives." Tex. Civ. Prac. & Rem. Code § 71.021(b). "It is well-settled that the estate of a decedent is not a legal entity and may not sue or be sued as such." *Supak v. Zboril*, 56 S.W.3d 785, 792–93 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975)). A suit seeking to establish liability against a decedent should ordinarily be instituted against the personal representative or against the heirs or beneficiaries. *Price*, 522 S.W.2d at 691; *Supak*, 56 S.W.3d at 793. "When no one has qualified as executor or administrator of the estate of a deceased spouse, the surviving spouse, whether the husband or wife, as the surviving partner of the marital partnership has power to

25

sue and be sued for the recovery of community property . . . ." Tex. Prob. Code § 160.[8]

The community property subject to the sole or joint management, control, and disposition of a spouse during marriage continues to be subject to the liabilities of that spouse on death. Tex. Estates Code § 101.052(a). Additionally, the interest that the deceased spouse owned in any other nonexempt community property passes to the deceased spouse's heirs or devisees charged with the debts that were enforceable against the deceased spouse before death. *Id.* § 101.052(b).

Stated otherwise, community assets of an estate, although they may vest in the surviving spouse and heirs upon the decedent's death, are held subject to the payment of community debts and subject to the right of a duly appointed and qualified personal representative to have possession and control under orders of the court during administration. *In re Estate of Herring*, 983 S.W.2d 61, 63 (Tex. App.—Corpus Christi 1998, no pet.). Moreover, while under the jurisdiction of the probate court, all community property, including the half-interest of the surviving spouse, is subject to administration and sale by the probate court as a part of the estate of the deceased spouse. *Id.* The authority of the personal representative over the survivor's one-half of the community property in the representative's possession, however, is limited to what is necessary to satisfy the debts of the deceased spouse properly payable out of such community assets. *Id.*

When there is no duly appointed executor, the proper parties are the heirs or beneficiaries of the estate. *In re Estate of Whittington*, 409 S.W.3d 666, 671 (Tex. App.—Eastland 2013, no pet.) (citing *Rooke v. Jenson*, 838 S.W.2d 229, 230 (Tex.1992)). An heir, who is a person entitled under the statutes of descent and

---

[8] At the time this lawsuit was filed, this provision of the Texas Probate Code was in effect. Effective January 1, 2014, this provision was recodified in Texas Estates Code section 453.003.

distribution to a part of the estate of a decedent who dies intestate, includes the decedent's surviving spouse. Tex. Estates Code § 22.015. Those who receive the property of the decedent as heirs, devisees, or legatees receive the property subject to payment of the debts of the decedent. *Id.* § 101.051. However, if the property is insufficient to satisfy the debt, the creditor is not entitled to have a personal judgment against the heir. *Chadwick v. Watkins*, 258 S.W.2d 194, 196-197 (Tex. Civ. App.—Texarkana 1953, no writ).

Alternatively, if there is no qualified personal representative of a deceased spouse's estate, the surviving spouse, as the surviving partner of the marital partnership, may sue and be sued to recover community property. Tex. Prob. Code § 160.[9] However, this provision does not affect the disposition of the deceased spouse's property. *Id.*

## B.      Background

Appellee sued appellant "Ana Lisa Mines, as Personal Representative of the Estate of Jorge Luis Mines." Ana, through counsel, filed an original answer on behalf of "Ana Lisa Mines, Personal Representative of the Estate of Jorge Luis Mines" asserting general and specific denials. Ana later filed a first amended answer with a "specific denial" asserting that she had been sued in the wrong capacity.[10] Ana then filed a motion to enforce settlement agreement asking the trial court to enforce the alleged agreement between the parties and a motion for partial summary judgment as the personal representative. Ana filed a notice of rule 11 settlement agreement stating "COMES NOW Presumptive Defendant Ana Lisa Mines, identified as the Personal Representative of the Estate of Jorge Luis Mines .

---

[9] Effective January 1, 2014, this provision was recodified in Texas Estates Code section 453.003.

[10] Appellant asserted that she was sued in the wrong capacity in her first and second amended answers, but the answers were not verified.

. . ." In the third amended answer, Ana filed a "verified specific denial" that she was sued in the wrong capacity. In her third amended answer she attested that she "is not liable in the capacity in which she has been sued and there is a defect in the parties . . . . she has been sued in a capacity which does not exist. . . . She has been sued as the personal representative of the Estate of Jorge Luis Mines, and she is not, nor has she ever been a representative of the Estate of Mr. Mines . . . ."

Ana also filed a motion to dismiss for want of jurisdiction arguing that "[a]t the time of the filing of this lawsuit, and to this date, there has been no administration opened on the estate, and no person or entity has applied to be or designated as the personal representative for the estate." The motion was not supported by an affidavit but attached a record from the Harris County Clerk stating that the Clerk's records "do not indicate probate proceedings for [Jorge Luis Mines] as of" July 27, 2016. Later, Ana filed a supplement to her motion to dismiss and attached an affidavit attesting that she has "never been named as an heir or beneficiary to the Estate of Jorge Luis Mines" and that she is "not aware of any court proceeding involving the Estate of Jorge Luis Mines" other than the lawsuit with appellee.

After trial, Ana as Personal Representative filed a motion to disregard the jury verdict again raising the issue of capacity. The trial court denied this motion. Just over a month later, before the judgment was rendered, appellee moved for a trial amendment to "make it clear that the Court's Judgment is against [appellant] as surviving spouse, heir at law of, and legal representative of the Estate of Jorge Mines, deceased." The trial court granted this amendment. The final judgment states that it is against "Defendant ANA LISA MINES, as surviving wife of Jorge Mines, as heir at law of Jorge Mines, and as legal representative of Jorge Mines . . . ." Ana as Personal Representative filed a motion for new trial raising the

28

capacity issue and asserting that the amendment was too late and the judgment is void as a matter of law.

## C. Analysis

Trial amendments are "alterations in, or additions to, pleadings permitted to correct errors or supply omissions discovered during the trial." *Fincher v. B & D Air Conditioning & Heating Co.*, 816 S.W.2d 509, 514 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Rule 66 and 63 of the Texas Rules of Civil Procedure governs trial amendments. Rule 66 of the Texas Rules of Civil Procedure states in pertinent part:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading . . . the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense on the merits. Tex. R. Civ. P. 66.

> Rule 63 of the Texas Rules of Civil Procedure provides in pertinent part:

> Parties may amend their pleadings . . . by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party. Tex. R. Civ. P. 63.

It is well established that a party may amend its pleading after verdict but before judgment. *See, e.g.*, *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 940 (Tex. 1990); *Ortale v. City of Rowlett*, 696 S.W.2d 640, 641 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) ("Post-verdict trial amendments have been allowed to make the pleadings conform to the verdict in various situations."). When a request to

amend pleadings is made under Rule 66 or 63, a court must grant the trial amendment unless "(1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment." *CA Partners v. Spears*, 274 S.W.3d 51, 70 (Tex. Civ. App.—Houston [14th Dist.] 2008, writ den'd) (quoting *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex.), *cert. denied*, 512 U.S. 1236 (1994)). The burden of showing surprise or prejudice rests on the party resisting the amendment. *Id.*

There are circumstances where a trial amendment may not only be proper but mandatory. *See AON Props., Inc. v. Riveraine Corp.*, No. 14-96-00229-CV, 1999 WL 12739, at *18 (Tex. App.—Houston [14th Dist.] Jan. 14, 1999, no pet.) (citing *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664, 665 (Tex. 1992)). If the amendment is procedural in nature and merely conforms the pleadings to the evidence presented, the amendment is mandatory and the trial court must grant the amendment. *Id.* If, however, the amendment is substantive in nature, and changes a party's cause of action or asserts a new cause of action, the amendment is not mandatory and the trial court has discretion to deny the amendment. *Id.* In such a case, an appellate court will not disturb the decision of a trial court to allow or refuse a trial amendment unless there is a clear abuse of discretion.[11] *Id.*

The Texas Supreme Court in *Chapin* held that the amendment—adding a verified denial—was mandatory because it was of a formal, procedural nature. 844 S.W.2d at 665. The court described a procedural change as one that "simply

---

[11] Our courts favor a liberal construction of the rule and uniformly hold that trial amendments should be allowed whenever the interests of justice are served. *See Clark v. Walker-Kurth Lumber Co.*, 689 S.W.2d 275, 280 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or whether under the circumstances of the case, the trial court's action was arbitrary or unreasonable. *AON Props.*, 1999 WL 12739, at *18 (citing *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex.1990)). The reviewing court will determine whether the trial court abused its discretion by examining the entire record. *Clark*, 689 S.W.2d at 280.

conformed the pleadings to the evidence at trial" and does not change a "single substantive issue for trial." *Id.* Similarly, in *Krishan v. Ramirez*, the court concluded that the amendment "simply conformed the pleadings and the evidence presented at trial." 42 S.W.3d 205, 225 (Tex. App.—Corpus Christi 2001, pet. denied). In *Krishan*, the appellee sought leave to amend his pleadings to clarify that Ramirez was bringing suit in his capacity as guardian of the minor who was heir and assignee. *Id.* The court found that the trial court properly granted leave to file the amendment. *Id.*

The present case—correcting the name of the defendant from "Ana Lisa Mines, Personal Representative of the Estate of Jorge Luis Mines" to "Anna Lisa Mines, as the surviving wife of Jorge Luis Mines, as heir at law of Jorge Luis Mines, and as legal representative of Jorge Luis Mines, deceased"—is more in the nature of a procedural change, like *Chapin* and *Krishan*, than a substantive change. In this case, the amendment did not change a single substantive issue for trial. The only change was formal and procedural: changing the nine or ten words appearing after Ana's name.

In the original pleadings, appellee sued Ana as a representative of the estate of Jorge Luis Mines—he did not sue Ana in her individual capacity. This means that appellee will look to the property of the estate if he wins, which includes the separate property of the deceased spouse as well as the community property subject to the sole or joint management of the deceased spouse. This does not include appellant's separate property. Appellee, however, incorrectly named appellant as the "personal representative of the estate of Jorge Luis Mines" when there was no personal representative duly qualified.

This error was corrected by the trial amendment. The trial amendment clarified that appellant was still being sued as a representative of the estate—no longer as a personal representative, but rather as the surviving spouse, heir at law,

31

and legal representative of the decedent. None of these capacities reach the surviving spouse's separate property if a judgment is rendered against appellant. Because, under the code, being sued as surviving spouse, heir at law, and legal representative of the decedent also means that appellee will look to the assets of Jorge Mines, not to the separate property of Ana Mines, the trial amendment is more in the nature of a procedural change—not a substantive change. Accordingly, the amendment was mandatory, and the trial court did not err in allowing the amendment.[12]

Rule 301 of the Texas Rules of Civil Procedure only requires that "[t]he judgment of the court shall conform to the pleadings." Tex. R. Civ. P. 301. In this case under these facts, the trial court did not err in allowing appellee leave to make a trial amendment to clarify that Ana Lisa Mines was being sued as the surviving spouse, heir at law, and legal representative of the estate of Jorge Luis Mines. Therefore, the judgment of the court conformed to the amended pleadings and was proper.

We overrule appellants' seventh and eighth issues.

## VIII. CONCLUSION

Having sustained appellants' issue five in part, we reverse the portion of the trial court's judgment awarding future medical care expenses. We affirm the remainder of the trial court's judgment as challenged on appeal. Concluding the evidence is sufficient to support an award of $3,000 in future medical care

---

[12] Even if the amendment was substantive in nature, and therefore not mandatory, appellants do not meet their burden of showing surprise or prejudice. Although Ana objected to the proposed trial amendment, the record does not show that she was prejudiced or surprised. To the contrary, the record is replete with evidence that she was well aware that she had been sued in the incorrect capacity. Moreover, here due process rights were not violated. Ana was served with citation, made a general appearance, and was before the trial court at all times relevant to this appeal.

expenses, we suggest a remittitur of $7,000 of the future medical care expenses, modifying the award of damages in the judgment from $512,859.00 to $505,859.00.  Tex. R. App. P. 46.3.  If appellee Kenon D. Murphy timely files the remittitur with the clerk of this court within twenty days from the date of this opinion, we shall render an amended judgment modifying the trial court's judgment to reflect an award of $505,859.00 in damages and affirming the trial court's judgment as so modified.  Tex. R. App. P. 43.2(b), 46.3.  If the suggested remittitur is not filed, the case will be remanded to the trial court for further proceedings limited to redetermination of future medical care expenses of Kenon D. Murphy. *See Larson*, 730 S.W.2d at 641 (prevailing party has option to accept remittitur or have case remanded).

/s/     Ken Wise
        Justice

Panel consists of Chief Justice Christopher and Justices Wise and Zimmerer.