

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00420-CV

Juliann **CASTRO**,
Appellant

v.

**SCHLUMBERGER TECHNOLOGY CORPORATION** and Christopher Jones,
Appellees

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 19-03-25646-CV
Honorable Daniel J. Kindred, Judge Presiding

Opinion by:      Rebeca C. Martinez, Chief Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Patricia O. Alvarez, Justice
                 Beth Watkins, Justice

Delivered and Filed: May 31, 2023

AFFIRMED

Appellant Juliann Castro appeals from a take-nothing final judgment, rendered in accordance with a jury verdict, in favor of appellees Schlumberger Technology Corporation ("STC") and Christopher Jones (collectively "Schlumberger"). In six issues, which we reorder and broadly reclassify as three, Castro complains that: (1) the trial court abused its discretion in four evidentiary rulings; (2) the evidence is factually insufficient to support the verdict; and (3) the trial court abused its discretion in overruling her motion to equalize peremptory challenges. We affirm.

### I. BACKGROUND

On December 8, 2017, Jones, an employee of STC, was operating a tractor-trailer on State Highway 173 in Devine, Texas. At the same time, Castro was operating a sedan that was traveling in the same direction as Jones but to his right. After a red traffic light turned green, both drivers began accelerating. Soon thereafter, Jones moved into Castro's lane of travel. Consequently, Jones's vehicle sideswiped the driver's side of Castro's vehicle. Jones testified that he was traveling between twenty and twenty-five miles per hour at the time of the accident.

Devine Police Department Officer Christopher Martinez prepared a crash report, which lists Jones's changing of lanes when it was unsafe to do so as a contributing factor to the accident. An incident investigation report prepared by STC employees lists the "root cause" of the accident as Jones's failure to identify Castro's vehicle "in [the] passenger side blind spot of [the] tractor."

After the accident, Castro was taken by ambulance to the hospital. The emergency care physician prescribed Castro pain medication and advised her to follow up with her primary care physician. On April 24, 2018, Castro was evaluated by Howard Kagan, a physician assistant at Interventional Pain Management, also known as Tricity Pain Associates. Kagan referred Castro for a "stress test MRI" of her cervical spine at Brio San Antonio. Thereafter, Kagan referred Castro to two orthopedic surgeons for evaluation regarding pain in her neck and left shoulder. On September 6, 2018, Saqib Siddiqui, M.D., an orthopedic surgeon, examined Castro and reviewed the MRI images of her cervical spine. Dr. Siddiqui appreciated a disc herniation at the C4–C5 level based on his review of the MRI images. At this same appointment, Dr. Siddiqui recommended that Castro undergo a C4–C5 anterior cervical discectomy and fusion. On June 12, 2019, Castro underwent a cervical MRI at Touchstone Medical Imaging at Dr. Siddiqui's request. Harold Sonnier, M.D., a radiologist board certified in both diagnostic radiology and neuroradiology, prepared a report in which his impression was a "[n]ormal MRI cervical spine."

Dr. Siddiqui performed a C4–C5 fusion surgery on Castro on June 17, 2019. On September 21, 2020, Dennis Gutzman, M.D., a board-certified orthopedic surgeon, evaluated Castro for pain associated with her left shoulder. Castro testified that Dr. Gutzman recommended surgery to treat her left shoulder pain.

Before trial, Schlumberger attacked the qualifications and foundational reliability of Dr. Siddiqui's and Dr. Gutzman's causation opinions. Similarly, Castro attacked the qualifications of Dr. Sonnier to render opinions related to the recommendation of surgical treatment. The trial court limited the causation opinions of Dr. Siddiqui and Dr. Gutzman but not that of Dr. Sonnier.

At trial, Schlumberger defended against Castro's claims by positing that the accident did not proximately cause her any injuries that would have necessitated the medical care that she received. It also posited that Castro suffered from preexisting neck and shoulder conditions. Schlumberger retained Frank Garcia, M.D., a board-certified orthopedic surgeon, as a testifying expert. On June 14, 2019, Dr. Garcia performed an independent medical examination of Castro. Dr. Garcia testified that the June 12, 2019, MRI showed nothing that warranted the June 17, 2019, surgical treatment performed by Dr. Siddiqui. Both Dr. Siddiqui and Dr. Garcia agreed that the C4–C5 level of Castro's cervical spine evidenced signs of disc degeneration and osteophytes, which are bone spurs. Dr. Siddiqui acknowledged that an assault by Jeremy Lee Mata, Castro's boyfriend, on October 3, 2015, which broke one of Castro's ribs, "potentially" could have caused a disc herniation. As for Castro's left shoulder, Dr. Garcia reviewed a July 28, 2017 note by an emergency care physician, which provides, "Patient also is having some left shoulder pain which she has intermittently. No history of trauma but does have four young children with her and she is lifting one or more of the children most of the time."

Before the case was submitted to the jury, the trial court granted STC's motion for directed verdict on Castro's theories of negligent hiring, training, and supervision and her claim for gross

negligence. The first question in the jury charge asked: Did the negligence, if any, of Christopher Jones proximately cause the injuries in question? The jury unanimously answered, "No." The trial court rendered a take nothing judgment in accordance with the jury's verdict. Castro timely appealed from the trial court's judgment.

## II. DISCUSSION

### A. Evidentiary Rulings[1]

Castro's first issue consists of four sub-issues. Regarding the first two rulings, Castro contends that the trial court erred by granting Schlumberger's motion to limit the causation opinion of Dr. Siddiqui and the causation opinion and surgical cost estimate of Dr. Gutzman. Third, Castro contends that the trial court erred by denying her motion to limit the testimony of Dr. Sonnier. Fourth, Castro contends that the trial court erred by sustaining Schlumberger's objection to the certified driving records of Jones.

We review a trial court's decision to admit or exclude evidence — including expert testimony — for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001).

---

[1] Schlumberger contends that all of Castro's appellate issues are moot because she did not object to the jury instruction conditioning the damages question on an affirmative finding that Jones's negligence proximately caused her injuries. We overrule Schlumberger's waiver challenge. *See, e.g., Pennekamp v. C&J Air Conditioning & Heating Co.*, No. 04-98-00632-CV, 1999 WL 1073813, at *3 (Tex. App.—San Antonio Nov. 24, 1999, no pet.) (mem. op., not designated for publication) (declining to find waiver of legal sufficiency challenge to liability answer where claimant did not object to conditional submission of damages question). In support, Schlumberger relies on authority concerning special issues. *See, e.g., Little Rock Mfg. Co. v. Dunn*, 222 S.W.2d 985, 989–91 (Tex. 1949), *abrogated by St. Paul Fire & Marine Ins. Co. v. Murphree*, 357 S.W.2d 744, 749 (Tex. 1962). However, in 1973, the Texas Rules of Civil Procedure were amended to permit broad-form submission of jury questions and, in 1987, to require such submission. *See H.E. Butt Groc. Co. v. Bilotto*, 985 S.W.2d 22, 23 (Tex. 1998). The conditional jury instruction given here comports with Rule 277 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 277. ("The court may predicate the damage question or questions upon affirmative findings of liability."). It also comports with Instruction 28.1 of the Texas Pattern Jury Charge, which is in turn premised on Rule 277. *See* State Bar of Texas, TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE, INTENTIONAL TORTS & WORKER COMPENSATION PJC 28.1, cmt. (2020) ("PJC 28.1 may be used to condition answers to personal injury damages questions on a finding of liability as permitted by TEX. R. CIV. P. 277."); *see also H.E. Butt Groc. Co. v. Bilotto*, 928 S.W.2d 197, 199 (Tex. App.—San Antonio 1996) (en banc) ("Although we are aware that the Texas Pattern Jury Charges are not 'law', they are heavily relied upon by both the bench and bar."), *aff'd by*, 985 S.W.2d 22 (Tex. 1998). Accordingly, we proceed to address the merits of Castro's issues.

Causation is an essential element of Castro's negligence claim. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (stating that causation is an element of negligence). To constitute evidence of causation, a medical expert's opinion must rest in reasonable medical probability. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995). In other words, "the ultimate standard of proof on the causation issue 'is whether, by a preponderance of the evidence, the negligent act or omission is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred.'" *Id*. (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993)). We must look past an expert's use of magic words, like "based on reasonable medical probability," to the substance of the expert's testimony in determining whether it qualifies as some evidence of causation. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711–12 (Tex. 1997). Importantly, when the evidence demonstrates that "there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty." *Id*. at 720; *see also Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010).

### 1. Dr. Siddiqui

Before trial, Schlumberger moved to limit Dr. Siddiqui from testifying that the December 8, 2017 motor vehicle accident proximately caused a cervical disc herniation, which in turn necessitated a surgery to fuse the C4–C5 level disc. Schlumberger's argument was twofold. First, it argued that Dr. Siddiqui lacked the requisite biomechanical qualifications to render a causation opinion. Second, it argued that Dr. Siddiqui's causation opinion was unreliable because he had not accounted for the 2015 assault and the specific forces produced by the December 8, 2017 accident. Castro responded by arguing that, although she was choked during the 2015 assault, she suffered no injury to her neck from it as evidenced by the emergency department records from eight days after the assault. Castro also argued that orthopedic surgeons opine "all the time" that

"there was no acute complaint prior to this injury and she has an acute complaint after the injury. Because of that, there's no other cause that could have caused this herniation or pain other than the trauma." At the conclusion of the pretrial hearing, the trial court held:

> I think it's proper for [Dr. Siddiqui] to testify that [Castro] had this injury. In his medical opinion he can I guess testify if he thinks it's a new injury or not. Is this injury years old from 2015 or is it, no, this looks like it's fairly new. I think he's qualified to testify to those things . . . I don't think it's improper for him to say it is consistent with someone who has been in a vehicle accident. But saying that particular model of vehicle sustained this type of damage, that tells me that, yes, this absolutely caused it, I don't think that line of testimony is proper for him. So that's my ruling on that.

Before the jury, Dr. Siddiqui testified:

| CASTRO'S COUNSEL: | And based upon reasonable medical probability, do you have an opinion — |
|---|---|
| DR. SIDDIQUI: | Yes. |
| CASTRO'S COUNSEL: | — as to whether or not the injuries you described to Ms. Castro's cervical spine are consistent with her history of being struck by an 18-wheeler? |
| DR. SIDDIQUI: | Yes. |
| CASTRO'S COUNSEL: | What do you base that opinion on and what is that opinion? |
| DR. SIDDIQUI: | The opinion is just based on my clinical experience of seeing a lot of patients with this type of injury and that type of history, as well as the history she gave me and the physical exam and the MRI findings. |
| CASTRO'S COUNSEL: | Did you take into consideration the temporal relationship between the pain and the crash? |
| DR. SIDDIQUI: | Yes. She said that the pain began after the car accident. It was not there before. And typically, patients will have pain within a day or two and up to a week or two later when the inflammation sets in. |

Dr. Siddiqui also testified that in all his years as a practicing orthopedic surgeon, he had never treated a patient who complained of pain in her neck as a result of domestic violence. On cross-

examination by Schlumberger's counsel, Dr. Siddiqui reviewed a Medina County Sheriff's Office report from October 3, 2015. On that date, Castro reported that Mata had assaulted her. Schlumberger's counsel highlighted for Dr. Siddiqui the report's narrative and physical assessment. In the narrative, Castro reported that Mata "got aggressive and strong physically when he started throwing me at first then swinging his arms at me left and right and then got more in a rage and there's punching and choking and being drug into another room." In the physical assessment, Castro reported that she felt a ten-out-of-ten level of pain in the "left part of my chest plus ribs, neck, head, my right hand and arm." Dr. Siddiqui acknowledged that the assault described in the report "potentially" could cause disc herniation "if there is enough force involved." Schlumberger's counsel also elicited from Dr. Siddiqui:

SCHLUMBERGER'S COUNSEL: You talk about forces and you talk about sudden forces and all that. You have no idea how this car accident happened, do you?

DR. SIDDIQUI: Yeah, I don't know the exact police report and direction of forces and all that will.

SCHLUMBERGER'S COUNSEL: Or the magnitude of the forces, right?

DR. SIDDIQUI: Right.

Outside the jury's presence and in Castro's offer of proof, her counsel asked Dr. Siddiqui:

CASTRO'S COUNSEL: Dr. Siddiqui, do you have an opinion based upon your MRI reading, the MRI report, the history and physical, the neurological examination that you performed on Ms. Castro, as to the cause of the disc herniation in her neck?

DR. SIDDIQUI: Yes.

CASTRO'S COUNSEL: What is that opinion?

DR. SIDDIQUI: I think in all reasonable medical probability I still believe it was the motor vehicle accident.

| | |
|---|---|
| CASTRO'S COUNSEL: | And are you familiar with the forces of car crashes that can cause twisting and whiplash and turning in the neck? |
| DR. SIDDIQUI: | Yes, I'm generally familiar because I see that a lot in my practice. |
| CASTRO'S COUNSEL: | And based upon the description of the car crash that not only [Schlumberger's counsel] but I have described to you, are those the types of forces that can cause a herniated disc in Ms. Castro's spine? |
| DR. SIDDIQUI: | Yes. |

During the offer of proof, Schlumberger's counsel cross-examined Dr. Siddiqui, asking:

| | |
|---|---|
| SCHLUMBERGER'S COUNSEL: | Now with regard to the automobile accident, you testified earlier that it takes a certain amount of force or trauma to herniate a disc as a result of a car accident, right? |
| DR. SIDDIQUI: | Yes. |
| SCHLUMBERGER'S COUNSEL: | And you've done no evaluation, no analysis to try to determine the amount of force that she was subjected to, correct? |
| DR. SIDDIQUI: | Correct. |
| SCHLUMBERGER'S COUNSEL: | You made no attempt to determine the direction of force that she was subjected to in the car accident, correct? |
| DR. SIDDIQUI: | Correct. |
| SCHLUMBERGER'S COUNSEL: | You did not have access to a full medical history of Ms. Castro, did you? |
| DR. SIDDIQUI: | Not to the extent that's being shown today. |
| SCHLUMBERGER'S COUNSEL: | And you also testified that there can be multiple causes of herniated disc, correct? |
| DR. SIDDIQUI: | Yes. |

On appeal, Castro contends that the trial court abused its discretion by excluding the testimony she elicited from Dr. Siddiqui during her offer of proof. Castro primarily relies on *LMC Complete Automotive, Inc. v. Burke*, 229 S.W.3d 469, 477–79 (Tex. App.—Houston [1st Dist.] 2007, pet. denied), as support. In that case, an employee at an auto repair shop "heard a noise," and he then witnessed a vehicle rolling out of the shop with the driver's side door open. *Id*. at 474. A coworker was attempting to push a vehicle into the shop by himself, and he lost control. *Id*. The employee ran in front of the vehicle and stopped it by hand. *Id*. He immediately experienced back pain and informed his manager. *Id*. The employee eventually sought medical treatment, including two back surgeries, due to the injury. *Id*. At trial, the employee's treating physician, who participated in both back surgeries, testified as to causation. *Id*. at 477. The treating physician testified that the employee told him that the incident at the auto shop might have caused his back injury because he had never experienced back pain before the incident. *Id*. The treating physician noted that an x-ray, taken post-incident, revealed a herniated disc in the employee's lower back. *Id*. A jury found the employer negligent, and the employer challenged the reliability of the treating physician's causation opinion on appeal. *Id*. at 478. The First Court of Appeals held that the treating physician's causation opinion was reliable because it was based on "the history the patient presented" and "the results of medical tests and examination." *Id*. at 479. Schlumberger contends that Castro's reliance on *LMC Complete Automotive* is misplaced because, among other things, the employee in that case had not experienced prior neck trauma that resulted in severe pain, as Castro did approximately two years before the accident in question.

We agree that Castro's reliance on *LMC Complete Automotive* is misplaced. First, there is no indication that the employee in that case experienced neck trauma that resulted in severe pain. Second, after the First Court of Appeals issued *LMC Complete Automotive*, the Texas Supreme Court issued *Jelinek*, 328 S.W.3d at 536, which reinforced the rules that govern the legal

sufficiency analysis of causation opinions in cases involving circumstantial evidence. In *Jelinek*, the expert testified that a hospital's "negligence 'in medical probability' caused [a patient's] additional pain and suffering." *Id*. at 535. The expert based this opinion on the presence of an infection that could have been treated with certain antibiotics. *Id*. Circumstantial evidence of infection existed, but there was no direct evidence of an infection. *Id*. The expert conceded that the circumstantial evidence on which he relied to form his opinion that the patient suffered from the specific infection was "equally consistent with two other infections cultured from" the patient's incision and blood — neither of which were treatable by the antibiotics in question. *Id*. The Texas Supreme Court held:

> When the only evidence of a vital fact is circumstantial, the expert cannot merely draw possible inferences from the evidence and state that "in medical probability" the injury was caused by the defendant's negligence. The expert must explain why the inferences drawn are medically preferable to competing inferences that are equally consistent with the known facts.

*Id*. at 536.

In this case, Castro does not contend that Dr. Siddiqui has personal knowledge of when the C4–C5 disc herniation occurred that was gained by contemporaneous observation. *Cf. Goad v. State*, 354 S.W.3d 443, 451 n.1 (Tex. Crim. App. 2011) (Alcala, J. concurring) (citing BLACK'S LAW DICTIONARY 595 (8th ed. 2004) (referring "to evidence that is based on inference and not on personal knowledge or observation as 'circumstantial evidence.'")). Moreover, Dr. Siddiqui testified that both the October 3, 2015 assault and the December 8, 2017 accident were *potential* causes of the herniation that he observed, and he acknowledged that he did not know the forces exerted in both. Accordingly, *when* the C4–C5 disc herniation occurred is akin to whether an infection was present in *Jelinek* because only circumstantial evidence exists as to both. Dr. Siddiqui's reliance on the "MRI reading, the MRI report, the history and physical, [and] the neurological examination" does not explain why the December 8, 2017 accident is medically

preferable as a cause of the C4–C5 disc herniation to the 2015 assault.[2] *See Jelinek*, 328 S.W.3d at 536. On this record, the trial court did not abuse its discretion in excluding Dr. Siddiqui's causation opinion because the trial court may have concluded that it was foundationally unreliable. We, therefore, hold that the trial court did not abuse its discretion in limiting Dr. Siddiqui's testimony.[3]

### 2. Dr. Gutzman

Before trial, Schlumberger moved to exclude Dr. Gutzman from testifying because, among other things, Castro's January 1, 2021 designation of him was past the December 27, 2019 deadline for Castro to designate experts, and Dr. Guzman's causation opinion was unreliable. At a pretrial hearing, the trial court orally ruled, "I'm going to find that [Castro's designation of Dr. Gutzman] did not meet the deadline and I'm not going to let it in." At trial, the trial court allowed Castro to play parts of Dr. Gutzman's pretrial deposition to the jury. However, consistent with its pretrial rulings, it excluded Dr. Gutzman's causation opinion and his estimate for the cost of a recommended future shoulder surgery.

On appeal, Castro contends that the trial court abused its discretion in excluding Dr. Gutzman's opinion and estimate because he was qualified, and his opinion and estimate are based on a reliable foundation. Schlumberger responds by arguing that, among other things, Castro's designation of Dr. Gutzman was untimely. We agree with Schlumberger.

---

[2] Castro also relies on *Hospadales v. McCoy*, 513 S.W.3d 724, 737–40 (Tex. App.—Houston [1st Dist.] 2017, no pet.), and *Hayhoe v. Henegar*, 172 S.W.3d 642, 644 (Tex. App.—Eastland 2005, no pet.). She references these opinions for the proposition that a treating physician's causation opinions are reliable if based on that physician's "own expertise and his own personal experiences as [a patient's] treating physician." Castro's reliance on these two opinions is misplaced. In *Hospadales*, the treating physician reviewed the patient's past medical records, including MRIs from *before* the accident in question, to formulate his causation opinion. 513 S.W.3d at 738–39. Notably, the treating physician testified that the "MRI [from before the accident] showed [the patient] had a posterior annular tear at the L5–S1 level in [the patient's] lower back that was not present in the [pre-accident] MRI." *Id*. at 738. The opinion in *Hayhoe* makes no mention of whether the patient had previously sustained trauma to the same spinal region implicated in the personal injury claim. 172 S.W.3d at 644–45. *Hayhoe* is, therefore, distinguishable from the instant case.

[3] Given our disposition, we need not address whether Dr. Siddiqui was qualified to render a causation opinion.

Under Texas Rule of Civil Procedure 193.6(a), when a party fails to supplement a discovery response in a timely manner, the evidence may be excluded. *See* TEX. R. CIV. P. 193.6(a); *see also Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992). The remedy is mandatory and automatic unless the court finds there was good cause for the failure to amend or supplement, or the failure will not unfairly surprise or prejudice the other party. *See* TEX. R. CIV. P. 193.6(a); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–98 (Tex. 1986); *see also Cincinnati Ins. Co. v. Villanueva*, No. 04-20-00389-CV, 2022 WL 608962, *4 (Tex. App.—San Antonio Mar 2, 2022, pet. denied). Rule 193.6(b) provides, "[t]he burden of establishing good cause or the lack of unfair surprise or unfair prejudice is on the party seeking to introduce the evidence or call the witness." TEX. R. CIV. P. 193.6(b). The trial court has discretion to determine whether the offering party has met its burden of showing good cause or lack of unfair surprise, and the record must support its findings. *See Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 3 (Tex. 1994); *see also Villanueva*, 2022 WL 608962, at *4.

Similarly, trial courts have broad discretion to manage and control their dockets. *See, e.g., Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982). Here, the docket control order provided that Castro's expert designations were due by December 27, 2019. Castro first designated Dr. Gutzman on January 1, 2021. In a pre-trial hearing, the trial court concluded that Castro's designation of Dr. Gutzman was late and excluded Dr. Gutzman's cost estimate and causation opinions for that reason. We believe this decision was well within its discretion, and therefore conclude the trial court did not clearly abuse its discretion in excluding Dr. Gutzman's belatedly designated opinions on causation and the cost of Castro's future surgical care. We, therefore, overrule Castro's complaint about the exclusion of Dr. Gutzman's causation opinion and cost estimate.

**3.     Dr. Sonnier**

Before trial, Castro moved to limit Dr. Sonnier from testifying that the condition of her cervical spine did not necessitate the spinal fusion surgery performed by Dr. Siddiqui.  At a pretrial deposition on direct examination by Schlumberger's counsel, Dr. Sonnier testified:

| | |
|---|---|
| SCHLUMBERGER'S COUNSEL: | And — but you were the actual treating physician or one of the treating physicians for the Plaintiff in this case, Juliann Castro; is that correct? |
| DR. SONNIER: | I did read an MRI of hers. |
| SCHLUMBERGER'S COUNSEL: | Did you see anything in this MRI that you believe warranted surgery or surgical correction? |
| DR. SONNIER: | I — no. I did not see anything on the one set of images. |

Castro objected to this specific testimony because she contended that Dr. Sonnier was unqualified to render opinions related to the recommendation of surgical treatment.  Castro supported her objection by highlighting part of her cross-examination of Dr. Sonnier, wherein he testified:

| | |
|---|---|
| CASTRO'S COUNSEL: | Okay, and in terms of a — a recommendation as to whether a patient does or does not need surgery, you haven't recommended one way or the other that Juliann Castro undergo surgery or not undergo surgery; is that correct? |
| DR. SONNIER: | I have not. |
| CASTRO'S COUNSEL: | You have not made a recommendation either way; is that — |
| DR. SONNIER: | I have not. |
| CASTRO'S COUNSEL: | Okay.  So you're not saying she doesn't need surgery, nor are you stating that she did need surgery; is that — |
| DR. SONNIER: | I am not stating either of those things. |

The trial court denied Castro's motion to limit Dr. Sonnier's testimony, and both of the aforementioned deposition excerpts were played for the jury's consideration.

On appeal, Castro contends that the trial court abused its discretion by denying her motion to limit Dr. Sonnier's testimony and that the error was harmful. Schlumberger counters that no abuse of discretion occurred, and even if so, any such error was harmless. In support of its harmless error contention, Schlumberger references *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 881 (Tex. 2008) (per curiam), and contends that the complained of testimony by Dr. Sonnier is cumulative of Dr. Garcia's unchallenged testimony. At trial, Dr. Garcia testified:

| | |
|---|---|
| SCHLUMBERGER'S COUNSEL: | [A]nd then also is your opinion basically the same as Dr. Sonnier's as far as do — you know, does the 2019 MRI image show any indication, show any kind of herniation, anything that warrants surgery? |
| DR. GARCIA: | No. |
| SCHLUMBERGER'S COUNSEL: | Okay, and that's consistent with Dr. Sonnier's? |
| DR. GARCIA: | That's correct. |

On appeal, Castro challenges neither Dr. Garcia's qualifications nor his opinion that the 2019 MRI interpreted by Dr. Sonnier showed nothing that would warrant surgery.

In *Dawmar Partners*, the State challenged the qualifications of two experts that had been called by an opposing party. *Id*. The Texas Supreme Court observed that the testimony of the two experts was cumulative to that of a third expert, whose testimony had not been challenged on appeal. *Id*. It then concluded that any error in admitting the two experts' testimony was harmless. *Id*. We conclude that the complained of testimony by Dr. Sonnier is cumulative of Dr. Garcia's unchallenged testimony. Under *Dawmar Partners*, we hold that the error, if any, of admitting the complained of testimony by Dr. Sonnier is harmless.

### 4.      Jones's Certified Driving Records

Castro sought to admit Jones's certified driving records on three occasions. At a pretrial hearing, Castro argued that the driving records were relevant to her negligent hiring claim against STC and to undermine Jones's credibility because he did not disclose contents of his driving record on his job application. The trial court expressed concern that some events may be too remote in time. It declined to pre-admit Jones's driving records, and instead, it deferred a ruling. On cross-examination, Castro's counsel cross-examined Jones about a prior "crash" and a ticket for operating an overweight commercial vehicle.[4] Castro again urged admission of Jones's driving records, even offering to redact all but the prior crash and ticket from them. The trial court sustained Schlumberger's relevancy objections. On direct examination, Schlumberger's counsel asked Jones: "What is your expectation that your lifelong driving history would have shown that you gave [your prospective employer] permission to obtain when you were applying for a job with them?" Jones responded that "they would have been in good standards." Thereafter, Castro argued that Schlumberger had waived its relevancy objection because it had opened the door to Jones's driving records. She again urged admission of Jones's driving record based on a need to rebut the false impression that had been made.

On appeal, Castro raises the same arguments that she presented below in support of her contention that the trial court erred by sustaining Schlumberger's relevancy objection. Schlumberger responds by arguing, among other things, that the error, if any, was harmless. The erroneous exclusion of evidence is likely harmless if the evidence was cumulative or if the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *Gunn v.*

---

[4] Jones's driving records showed that, in the three years before the December 8, 2017 motor vehicle accident, Jones had been involved in a "crash" and been "convicted" for operating an overweight commercial vehicle. The records also showed four other events that had occurred between 1995 and 2011.

*McCoy*, 554 S.W.3d 645, 668 (Tex. 2018). By contrast, exclusion of the evidence is likely harmful if it was "crucial to a key issue." *Id*. (quoting *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009)).

A redacted version of Jones's driving records — as Castro's counsel offered for admission during Jones's examination — contained the prior crash and ticket that Jones discussed under cross-examination. The excluded document was, therefore, cumulative of Jones's testimony. *Gunn*, 554 S.W.3d at 668. Moreover, Castro fails to explain how Jones's driving records were crucial to a key issue. *Id*.; *see also* TEX. R. APP. P. 38.1(i). The first jury question inquired whether Jones's negligence, if any, proximately caused Castro's injuries; however, Castro has not explained how Jones's driving records would have guided the jury on the causation question that it was tasked with answering. Assuming, without deciding, that the trial court erred in sustaining Schlumberger's relevancy objection, any error is harmless.

Having overruled all four of its sub-issues, we overrule Castro's first issue.

**B.      Factual Sufficiency Challenge**

In Castro's second issue, she contends that the jury's answer of "No" to the first question is supported by factually insufficient evidence. The first question asked: Did the negligence, if any, of Christopher Jones proximately cause the injuries in question? In support of Castro's factual sufficiency challenge, she points to: (1) Jones's admission that he was "at fault"; (2) steps that Jones could have taken to operate his vehicle in a safer manner; (3) Officer Martinez's determination that Jones contributed to the accident by making an improper lane change and by not paying attention to the surrounding traffic; (4) and an internal investigation conducted by STC that revealed that Jones's conduct was either the root cause or a contributing cause of the accident.

Schlumberger responds by arguing, among other things, that Castro inadequately briefed her factual sufficiency challenge by both focusing on the cause of the *occurrence* rather than the

cause of Castro's *injuries* and failing to address the evidence in favor of the jury's answer to the first question. It references two cases in support of its waiver argument. In *Archer v. DDK Holdings LLC*, 463 S.W.3d 597, 603 (Tex. App.—Houston [14th Dist.] 2015, no pet.), the appellants framed their issues as challenges to the legal and factual sufficiency of the evidence. However, they did not address the evidence favorable to the opposing — and prevailing party — and instead, they emphasized that the evidence favoring them was undisputed. *Id*. The Fourteenth Court of Appeals held that they waived any challenge to the factual sufficiency of the evidence. *Id*. In *Norstrud v. Cicur*, No. 02-14-00364-CV, 2015 WL 4878716, at *6 (Tex. App.—Fort Worth Aug. 13, 2015, no pet.) (mem. op.), the Second Court of Appeals faced a similar situation, and it reached the same holding.

"When a party attacks the factual sufficiency of an adverse finding on an issue on which [the party] has the burden of proof, [the party] must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In our review, we "must consider and weigh all of the evidence, and [we] can set aside a verdict only if . . . the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id*.

In our analysis of Castro's first issue, we addressed some of the evidence in favor of the jury's answer to the first question. As previously noted, Dr. Garcia testified that the 2019 MRI interpreted by Dr. Sonnier showed no indication that would warrant the spinal surgery performed by Dr. Siddiqui. Dr. Garcia also testified that Castro did not have a shoulder injury that would require surgical treatment. None of the four pieces of evidence that Castro references speaks to the causation question that the jury answered. Considering and weighing Dr. Garcia's opinions regarding the cause of Castro's alleged injuries against the four pieces of evidence showcased by Castro in her factual sufficiency challenge, we cannot say that the jury's answer was so against the

great weight and preponderance of the evidence that it is clearly wrong and unjust. *See id.*; *see also Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006) (per curiam) (noting that "neither the appellate rules nor [the Texas Supreme Court] require detailed recitations of the evidence when a factual sufficiency complaint is overruled.").

We overrule Castro's second issue.

## C.     Peremptory Challenges

In Castro's third issue, she contends that the trial court abused its discretion by denying her motion to equalize peremptory challenges. This ruling, according to Castro, led to a disproportionate allocation of peremptory challenges among the two sides because there was no antagonism between STC and Jones.

### 1.     Standard of Review & Applicable Law

In a civil case tried in a district court, each party is entitled to six peremptory challenges (sometimes referred to as "strikes"). TEX. R. CIV. P. 233. If there are multiple parties, the trial court must decide before peremptory challenges are exercised whether the litigants aligned on the same side are antagonistic with respect to issues that will be submitted to the jury. *Id.* If one of the litigants makes a motion before peremptory challenges are exercised, the trial court must "equalize the number of peremptory challenges so that no litigant or side is given an unfair advantage as a result of the alignment of the litigants and the award of peremptory challenges." *Id.* Thus, the trial court must determine whether the litigants aligned on one side are antagonistic to each other as to fact issues for the jury; if not, it should give each side the same number of challenges. *Garcia v. Cent. Power & Light Co.*, 704 S.W.2d 734, 736 (Tex. 1986).

Whether aligned parties are antagonistic to each other is a question of law that must be determined after *voir dire* and before the parties exercise their strikes, based upon information taken from the pleadings, pretrial discovery, *voir dire*, and other information brought to the court's

attention. *Id*. at 736–37. If the record supports a conclusion of antagonism between parties on one side, the trial court must exercise its discretion and determine how to allocate strikes among the parties. *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 919 (Tex. 1979).

If we determine that the trial court erred in concluding that there was antagonism or in how it allocated the parties' peremptory challenges, we must then determine, based on an examination of the entire record, whether that error resulted in a "materially unfair" trial. *Garcia*, 704 S.W.2d at 737. "[I]n a case in which the complaining party failed to prove his cause of action or defense, an error in allocating or equalizing strikes could not be said to have resulted in a materially unfair trial." *Patterson Dental Co.*, 592 S.W.2d at 921. "On the other hand, when the trial is contested and the evidence is sharply conflicting, the error results in a materially unfair trial without showing more." *Id*. In formulating its test for whether a trial was materially unfair, the court in *Patterson Dental* observed:

> Here, we have no statement of facts of the testimony at the trial or of the [v]oir dire examination of the jury panel. It is abundantly clear, however, from the [forty-four] special issues submitted, the ten-to-two verdict, and the absence of any motion for summary judgment or motion for instructed verdict in the record before us, that the trial was hotly contested. In these circumstances we hold that in the absence of a statement of facts that demonstrates that the non-complaining party would otherwise have been entitled to a judgment or that the case was not seriously disputed on its facts, a disparity of strikes between sides of as much as four-to-one results in a materially unfair trial as a matter of law.

*Id*. Whether a jury deadlocks during the course of its deliberations may be a sign that the trial was seriously contested and the evidence was sharply conflicting. *Lopez v. Foremost Paving, Inc.*, 709 S.W.2d 643, 645 (Tex. 1986) (per curiam) ("[T]he fact that the jury was deadlocked at one point shows that the jury believed there was a sharp conflict in the evidence and that the trial was seriously contested.").

### 2. Analysis

Castro argues that the error in denying her motion to equalize peremptory challenges resulted in a materially unfair trial. Specifically, she argues that reversal and remand are necessary under the second *Patterson Dental* test because the trial was hotly contested and the evidence was sharply conflicting. As support for her position, Castro points to the motions for summary judgment filed by both parties, the motions for directed verdict lodged and obtained by Schlumberger, the seven-day length of the jury trial, the "vigorous cross-examination" imposed on some of the witnesses, and the "competing causation theories."

Schlumberger responds by arguing that, even if the trial court erred, the error was harmless under the first *Patterson Dental* test because Castro failed to prove her cause of action. In support of its argument, Schlumberger points to Castro's failure to: (1) appeal the trial court's granting of STC's directed verdict; (2) present reliable evidence linking Jones's conduct to the cause of her alleged injuries in the trial court; and (3) convince us that the trial court erred in excluding the causation opinions of Dr. Siddiqui and Dr. Gutzman. Schlumberger also highlights that the jury deliberated for less than an hour before returning a unanimous verdict. *Cf. Lopez*, 709 S.W.2d at 645.

Assuming, without deciding, that the trial court erred in overruling Castro's motion to equalize peremptory challenges, Castro has failed to establish that the error, if any, resulted in a materially unfair trial. Unlike in *Patterson Dental*, we have before us the reporter's record of the trial testimony and voir dire. *Patterson Dental*, 592 S.W.2d at 921. Beyond highlighting the existence of motions for directed verdict, Castro fails to explain how the trial court erred in granting STC's motions for directed verdict on her gross negligence claim and theories of negligent hiring, training, and supervision. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (holding that standard of review for legal sufficiency challenge applies to review of

directed verdict). In light of the harm analysis formulated by *Patterson Dental*, the robust record before us, and Castro's failure to convincingly assail the directed verdicts that the trial court granted against her, we cannot conclude that STC's filing of motions for directed verdicts are an indication that the evidence was sharply conflicting for the purposes of a harm analysis.

Castro's reliance on the length of the jury trial, her general assertion that some of the witnesses were subjected to "vigorous cross-examination," and that the trial included "competing causation theories" to demonstrate harm are all equally unavailing. The length of the trial alone does not intrinsically indicate that the evidence was sharply conflicting. Relatedly, Castro does not specifically reference any "vigorous cross-examination." Lastly, Castro's contention that the trial included "competing causation theories" fails in light of our holding that the trial court did not err in granting Schlumberger's motions to limit the causation opinions of Dr. Siddiqui and Dr. Gutzman and denying Castro's motion to limit the testimony of Dr. Sonnier and Dr. Garcia. *Cf. Moore v. Altra Energy Tech., Inc.*, 321 S.W.3d 727 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (rendering judgment on a claim that was supported by legally insufficient evidence and remanding the remainder of the case for a new trial after concluding that trial court erred in finding antagonism among the appellants' opposing parties); *"Y" Propane Serv., Inc. v. Garcia*, 61 S.W.3d 559, 564–70 (Tex. App.—San Antonio 2001, no pet.) (denying appellant's legal sufficiency challenge and then remanding case for a new trial after concluding that trial court erred in finding no antagonism between plaintiffs and a codefendant).

We overrule Castro's third issue.

### III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice